IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:08-CV-160-D

| | | |
|---|---|---|
| ROBIN CANNON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income disability benefits ("SSI") on the grounds that she is not disabled. The case is before the court on the parties' respective motions for judgment on the pleadings (D.E. 25, 31) with supporting memoranda (D.E. 26, 32). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 36). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

## I. BACKGROUND

### A.    Standards for Disability

The Social Security Act ("Act") defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The Act defines a physical or mental impairment as "an

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §1382c(a)(3)(D). "[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] and meets the duration requirement, we will find that you are disabled. . . .

> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. § 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments must be considered throughout the disability determination process. *Id.*

## B.    Procedural History

Plaintiff filed an application for SSI benefits on 3 January 2006.[1] Transcript of Proceedings ("Tr." or "tr.") 19, 220-23, 239. She alleged that she became disabled on 30 June 2000 due to a stroke, high blood pressure, and diabetes. Tr. 19, 239, 250. The application was denied initially and again upon reconsideration, and a request for hearing was timely filed. *Id.* 19, 204-07, 208, 215. On 29 November 2007, a video hearing was held before an Administrative Law Judge ("ALJ"). *Id.* 19, 336-61.

In a written decision dated 10 January 2008, the ALJ found that plaintiff was not disabled and therefore was not entitled to SSI. *Id.* 19-29. Plaintiff timely requested review by the Appeals Council on 17 January 2008. *Id.* 14-15. The Appeals Council denied the request on 11 July 2008. *Id.* 8-11. At that time, the decision of the ALJ became the final decision of the Commissioner,

---

[1] Plaintiff had filed an application for SSI in 2003, but abandoned it. Tr. 19. Numerous documents relating to that application are included in the record of this case.

3

pursuant to 20 C.F.R. § 416.1481. *Id.* Plaintiff commenced this proceeding for judicial review on 11 September 2008 in accordance with 42 U.S.C. §§ 405(g) and 1383(c)(3). (*See* Compl. (D.E. 7)).

## C.    Findings of the ALJ

Plaintiff was 41 years old on the alleged onset date of disability and 48 years old on the date of the administrative hearing. Tr. 340. She has an eighth grade educational level and has not worked in at least the past 15 years. *Id.* 340, 346.

Applying the five-step analysis of 20 C.F.R. § 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her application date. *Id.* 21 ¶ 1. At step two, the ALJ found that plaintiff had the following medically determinable impairments which were severe within the meaning of the Regulations, 20 C.F.R. § 416.920(c): hypertension, diabetes mellitus, gastroesophageal reflux disease, a history of cerebrovascular accident, obesity, a depressive disorder, organic mental impairment with reduced intellectual functioning, and a history of alcohol and cocaine dependence. *Id.* 21 ¶ 2. The cerebrovascular accident occurred in July 2001 and produced right-sided weakness. *Id.* 23. At step three, however, the ALJ found that plaintiff's impairments did not meet or medically equal one of the listed impairments in appendix 1 to 20 C.F.R. part 404, subpart P. *Id.* 21 ¶ 3.

The ALJ determined that plaintiff had the RFC to perform a wide range of sedentary work activity. *Id.* 22 ¶ 4, 28 ¶ 4. Specifically, he found that plaintiff could lift ten pounds occasionally, and sit six hours, and walk and stand two hours out of an eight-hour workday. *Id.* 28 ¶ 4. But, due to her decreased ability to concentrate on and attend to work tasks, the ALJ found plaintiff able to do only simple, routine, repetitive tasks not requiring complex decision making, constant change, or dealing with crisis situations. *Id.* 22 ¶ 4, 28 ¶ 4.

4

The ALJ found at step four that plaintiff had no past relevant work. *Id.* 28 ¶5. At step five,

the ALJ found there were jobs in the national economy existing in significant numbers that plaintiff

could perform, including specifically order clerk, touch-up screener, and wafer breaker/semi-

conductors. *Id.* 28-29 ¶ 9. In making this finding, the ALJ accepted the testimony of a vocational

expert that these jobs were consistent with the RFC the ALJ found plaintiff to have. *Id.*

## II. DISCUSSION

### A.    Standard of Review

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the

Commissioner is limited to considering whether the Commissioner's decision is supported by

substantial evidence in the record and whether the appropriate legal standards were applied. *See*

*Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th

Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial

evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld.

*See, e.g., Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d

773, 775 (4th Cir. 1972).

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Perales,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v.*

*NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than

a preponderance. *Perales,* 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the

decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992)

(*per curiam*). In addition, the court may not make findings of fact, revisit inconsistent evidence, or

make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## B. Plaintiff's Contentions

Plaintiff contends that the ALJ's decision should be reversed on the principal grounds that the ALJ erred by failing to properly assess the consultative evaluation of plaintiff by an examining psychologist. She also alleges that the ALJ committed legal error by failing to find that plaintiff's mental impairments meet or medically equal listing 12.02, and to adequately update the record. The court addresses each of these grounds in turn below.

## C. Assessment of Examining Psychologist's Evaluation

Plaintiff contends that the ALJ committed error in assessing the evaluation of plaintiff by clinical psychologist J. Michael Bramble, M.A. ("Bramble") on 26 September 2006. (Plf.'s Mem. 3-10). The court disagrees.

6

Bramble's evaluation of plaintiff consisted of a clinical interview and a battery of psychological tests. The results of the evaluation are set out in a five-page report in the record. Tr. 320-24. The ALJ includes a summary of the report in his decision. *Id.* 25.

Bramble found plaintiff to have moderate mental retardation, a depressive disorder, and cocaine dependence in remission. *Id.* 25, 323. Plaintiff expressed to Bramble an interest in working as a housekeeper, but he noted that her difficulties are severe and would require, among other things, "[s]imple and repetitive tasking, close supervision, and job coaching." *Id.* 323; *see id.* 25. He found that she "would probably be able to benefit from services through Vocational Rehabilitation" and recommended that she be considered for such services in four specified areas, cautioning that her prognosis was guarded. *Id.* 25-26, 323. He also stated that plaintiff's "combined difficulties are such that consideration for disability benefits is recommended." *Id.* 25, 324.

Plaintiff contends that the ALJ erred, in part, by giving Bramble's opinions too little weight. She contends that they were entitled to greater weight than the ALJ gave them because, among other reasons, Bramble actually examined plaintiff and performed tests on her. *See* 20 C.F.R. § 416.927(d) (evaluation of medical opinions).

In fact, though, the ALJ's determinations are largely consistent with Bramble's opinions. Most significantly, the ALJ's key determination that plaintiff was limited to "simple, routine, repetitive tasks . . . [not] requiring complex decision making, constant change, or dealing with crisis situations" (tr. 22) is consistent with Bramble's opinion that she required "[s]imple and repetitive tasking, close supervision, and job coaching" (*id.* 323).

The ALJ did state that he gave little weight to Bramble's recommendation that plaintiff be considered for disability benefits. *Id.* 27. But this opinion falls far short of a determination that

plaintiff is unable to work. Not only is it couched as a recommendation, as opposed to a finding, but it expressly urges simply consideration of plaintiff for disability benefits, as opposed to the award of such benefits. As has been seen, Bramble's report contains other statements substantiating plaintiff's ability to work.

Moreover, the ALJ cited specific reasons for giving this particular recommendation by Bramble little weight: plaintiff's lack of mental health treatment, her ability to understand Bramble's instructions, and two of Bramble's own findings—that she could perform simple repetitive tasks and could benefit from vocational rehabilitation services. *Id.* Although plaintiff challenges each of these reasons, they are all supported by substantial evidence in the record.

For example, plaintiff contends that plaintiff's lack of ongoing mental health treatment fails to show that she did not have disabling mental health problems because her mental condition prevented her from seeking such treatment. But, as the ALJ discussed (*id.* 25), plaintiff sought treatment at the Walter B. Jones Alcohol and Drug Abuse Treatment Center ("ADATC") in May 2004 (*id.* 181-97) and was then admitted in June 2004 for drug rehabilitation and other problems (*id.* 168-97). In addition, she regularly sought medical treatment from Kinston Community Health Center beginning in 2002, again as reflected in the ALJ's decision. *Id.* 23, 24, 27, 328. At many of her visits, she had her mental health status evaluated. *Id., e.g.,* 269-73, 296, 301, 302, 325, 326. Nonetheless, as discussed further below, the record does not show ongoing treatment of plaintiff for mental health problems. Thus, plaintiff had sufficient access to mental health services to support the ALJ's determination that her not receiving ongoing mental health treatment was evidence that she lacked a disabling mental health problem. *See* 20 C.F.R. § 416.929(c)(3)(iv), (v).

8

Plaintiff argues that Bramble did not determine that "[plaintiff] could understand instructions" as the ALJ said Bramble did. Tr. 25. But the ALJ's statement is a reasonable interpretation of the portion of Bramble's report reading, in part: "She did seem to understand instructions. . . . This evaluation appears to be an accurate measure of her abilities." *Id.* 321.

The ALJ also reasonably interpreted Bramble's evaluation in stating that Bramble concluded "that [plaintiff] can perform simple and repetitive tasks and could benefit from services through Vocational Rehabilitation." *Id.* 27. The most pertinent statements by Bramble on these points, already quoted in part above, are: "Simple and repetitive tasking, close supervision, and job coaching would be required. . . . She would probably be able to benefit from services through Vocational Rehabilitation." *Id.* 323. The related portions of the Bramble's report do not otherwise render the ALJ's interpretation unreasonable. Contrary to plaintiff's contention, the ALJ's interpretations do not reflect "'cherry picking.'" (Plf.'s Mem. 8).

Other portions of the record support the ALJ's interpretation of Bramble's evaluation as indicating that plaintiff retained the capacity to work notwithstanding her limitations. These include the Discharge Summary for plaintiff relating to her hospitalization at the ADATC from 9 June to 30 June 2004 (*id.* 168-72), which the ALJ discussed in his decision (*id.* 25).[2] Plaintiff went to this facility for help with stopping use of alcohol and drugs after she had lost her daughter and boyfriend, and had been living as a street person. *Id.* 168. Completed by Lawrence F. Ward, D.O., apparently a psychiatrist, the summary indicated that on discharge plaintiff was diagnosed with cocaine and alcohol dependence, depressive disorder, and nicotine dependence. *Id.* 172. She had completed all

---

[2] Plaintiff erroneously refers to this report as the "Admission Psychiatric Assessment" relating to her stay at the ADATC and as lacking an identified author. (Plf.'s Mem. 3). The purported title is, in fact, the heading for the initial section of the report. The actual title, "Discharge Summary," is listed in the lower right-hand corner of each page and its author signed in the typed signature block on the last page (tr. 172).

of her treatment objectives, and her mood and mental function were stable, with no suicidal or homicidal ideation or psychosis noted. *Id.* 171-72. Although her Global Assessment of Functioning Scale ("GAF") score upon admission was 55, it was 70 upon discharge. *Id.* 171, 172. A GAF score of 70 indicates, as the ALJ notes, only mild difficulty in social or occupational functioning. *Id.* 25, 172; Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed., text rev. 2000) ("DSM-IV-TR").[3]

Records of plaintiff's treatment at Kinston Community Health Center in 2005 and 2006 are in accord. Tr. 296-305; 325-27. For example, in June and December 2005, and February 2006, her mental status was found to be "normal." *Id.* 296, 301, 302. In the February 2006 visit, she "denie[d] depression." *Id.* 296. In June 2006, she did report depression to clinic physician Carol C. Bosholm, M.D. and was simply prescribed Cymbalta. *Id.* 296. In February 2007, Dr. Bosholm found that plaintiff suffered from depression, but was capable of low-stress work, albeit with frequent absences. *Id.* 329 nos. 11, 14; 331 no. 15.n. The ALJ discussed Dr. Bosholm's opinions in detail in his decision. *Id.* 23, 27.[4]

Consistent with this medical evidence, plaintiff's sister reported in June 2003 that plaintiff was able to do housework, cook, bathe, walk, and shop, all of which she did regularly. *Id.* 92, 94-95.

---

[3] The DSM-IV-TR states that a GAF score from 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV-TR 34.

[4] A Psychiatric Review Technique Form ("PRTF") completed by a consultant in February 2006 (tr. 282-95) found that plaintiff's impairments imposed few limitations on her. Plaintiff argues that the PRTF could not properly be relied upon by the ALJ. (Plf.'s Mem. 4-5). In fact, the ALJ did not rely on it. He states that "the record as a whole supports a different conclusion as to functional abilities," citing evidence received subsequent to the PRFT, sworn testimony at the hearing, and physicians' notes and opinions. Tr. 27.

10

She also said that plaintiff could pay her bills, handle a savings account, count change, and use a checkbook, and had regular social contact with family and friends. *Id.* 95-97.

Similarly, plaintiff's grown daughter reported in February 2006 that plaintiff prepared meals, babysat her 12-year old grandson, and cared for herself. *Id.* 242. The daughter stated that plaintiff had some memory problems, but that they did not prevent plaintiff from daily functioning. *Id.* The ALJ discussed the daughter's statement in his decision. *Id.* 27. The ALJ also addressed plaintiff's testimony, which he found to substantiate that plaintiff had the ability to perform activities of daily living. *Id.* 27, 351.

Moreover, as discussed, the ALJ recognized that plaintiff had severe mental impairments and limited plaintiff to simple, routine, repetitive tasks not requiring complex decision making, constant change, or dealing with crisis situations. *Id.* 21 ¶ 2, 22 ¶ 4. The ALJ therefore did not dismiss out of hand the types of concerns expressed by Bramble in his evaluation of plaintiff.

For this and the other reasons discussed, the court concludes that the ALJ did not err in his interpretation of Bramble's psychological evaluation of plaintiff. This challenge by plaintiff to the ALJ's decision is therefore without merit.

## D.    Listing 12.02

Plaintiff argues that the ALJ should have found that she met or medically equaled the listing for organic mental disorders, listing 12.02, based on her stroke in 2001 and its effects. (Plf.'s Mem. 10-11). The court disagrees.

The listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing not only any substantial gainful activity, but any

11

gainful activity at all. 20 C.F.R. § 416.925(a). Therefore, if a claimant's impairments meet or equal a listing, that fact alone establishes that the claimant is disabled. *Id.* § 416.920(d).

An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); Soc. Sec. R. 83-19, 1983 WL 31248 (1983). Even if an impairment does not meet the criteria, it can still be deemed to satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. § 416.925(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. § 416.926(a) (medical findings must be at least equal in severity and duration to the listed criteria). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531.

Section 12.00 of the listings addresses various mental disorders and, as indicated, listing 12.02 addresses organic mental disorders specifically.[5] To satisfy the requirements for this listing, plaintiff must show the presence of a psychological or behavioral abnormality associated with a brain dysfunction and documentation that establishes a "specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.02. To meet the required level of severity for organic mental disorders, a claimant must satisfy both the A and B criteria or, alternatively, the C criteria. *See generally id.* 12.00 (assessment of severity).

---

[5] The listings for mental disorders are separated into the following diagnostic categories: organic mental disorders (12.02); schizophrenic, paranoid and other psychotic disorders (12.03); affective disorders (12.04); mental retardation (12.05); anxiety-related disorders (12.06); somatoform disorders (12.07); personality disorders (12.08); substance addiction disorders (12.09); and autistic disorder and other pervasive developmental disorders (12.10).

To satisfy the A criteria, the claimant must demonstrate through medical documentation a loss of specific cognitive abilities or affective changes including one of the following: (1) disorientation to time or place; (2) memory impairment; (3) perceptual or thinking disturbances; (4) change in personality; (5) disturbance in mood; (6) emotional lability and impairment in impulse control; or (7) loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels. *Id.* § 12.02A. If at least one of those conditions is shown to exist, a claimant must then establish, pursuant to the B criteria, the medically documented persistence of at least two of the following resulting from such condition: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *Id.* § 12.02B. The "marked" level is the second highest, below "extreme" and above "moderate." *Id.* § 12.00C. The decompensation criterion is satisfied if the claimant has three episodes within a year or an average of one every four weeks, each lasting for at least two weeks. *Id.* § 12.00C.4.

As an alternative to satisfying the A and B criteria, a claimant may satisfy the C criteria by showing a medically documented history of a chronic organic mental disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities and one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. *Id.* § 12.02C.

13

Plaintiff contends that she meets both the A and B criteria because she has a measured loss of at least 15 points in intellectual ability (*id.* § 12.02A.7) and marked limitations in restrictions in daily living and social functioning (*id.* § 12.02B.1, 2). Alternatively, plaintiff argues that she meets or medically equals the C criteria because she has a current history of being unable for more than a year to function outside a highly supportive living arrangement. (*Id.* § 12.02C.3). She relies on medical test records from Lenoir Memorial Hospital showing evidence of her stroke in 2001 (tr. 123-30); the I.Q. and other testing by Bramble (*id.* 322) indicating a loss in intellectual function from that reflected in her school records (*id.* 230); and her "failure to obtain stable housing and employment." (Plf.'s Mem. 10).

The ALJ found that plaintiff failed to meet or medically equal the B criteria. Tr. 22. He determined that plaintiff had only mild restrictions in activities of daily living and social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. *Id.* He also found that plaintiff failed to satisfy the C criteria. *Id.*

The court finds that these determinations are supported by substantial evidence. This evidence includes that reviewed above. More specifically, Bramble's evaluation, the records of the Kinston Community Health Center, the statements of plaintiff's sister and daughter, and plaintiff's own testimony, among other evidence, support the determination that plaintiff did not have marked limitations in activities of daily living and social functioning, as plaintiff alleges, with respect to the B criteria.

Similarly, with respect to the C criteria, the evidence supports the determination that plaintiff does not have a current history of being unable for a year or more to function outside a highly supportive living arrangement. For example, plaintiff's only period of inpatient psychological

treatment, at the ADATC, lasted three weeks and she achieved by time of discharge a GAF score indicating only mild limitations. Tr. 168, 172. While plaintiff was at one point homeless, the record shows that status to have been transient.

The record thus supports the view reflected in the ALJ's decision that plaintiff's impairments simply do not have such a limiting effect on her to bring her within a listing. The court therefore rejects plaintiff's second challenge to the ALJ's decision.

## E.    Updating the Record

Plaintiff contends that the Commissioner erred by not obtaining an updated medical opinion on whether her impairments were equivalent in severity to any listing, pursuant to Social Security Ruling 96-6p, 1996 WL 374180 (2 July 1996). (Plf.'s Mem. 11-13). The court disagrees.

Social Security Ruling 96-6p addresses updating the findings by consultants to the Social Security program, as set forth in PRTFs or certain other documents, on whether the claimant's impairments are equivalent in severity to any listing. Soc. Sec. R. 96-6p, 1996 WL 374180, at *3. The ruling requires that the ALJ or Appeals Council obtain an updated medical opinion on equivalence in two circumstances:

> * When no additional medical evidence is received [after the consultant's findings], but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>
> * When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

Soc. Sec. R. 96-6p, 1996 WL 374180, at *3-4.

15

Here, the consultative psychological findings are in the PRTF of record, dated 13 February 2006, and they state that plaintiff's mental impairments are not equivalent to any listings. Tr. 292-93. Plaintiff contends that Bramble's 26 September 2006 evaluation and the related testing contained new evidence in "diametric opposition" to the equivalence finding in the PRFT that required an updated medical opinion under Social Security Ruling 96-6p. (Plf.'s Mem. 13).

But the ruling requires an updated medical opinion in this circumstance only if in the opinion of the ALJ or Appeals Council the additional medical evidence would change the finding on medical equivalence in the PRTF. It is apparent that neither the ALJ nor the Appeals Council was of this opinion. Tr. 8, 21-22. Their determination is supported by substantial evidence, the same substantial evidence that supports the ALJ's finding that plaintiff's impairments do not meet a listing. *See Hurley v. Astrue*, 2:08-cv-59, 2009 WL 1248971, at *16 (W.D. Va. 4 May 2009) (holding that updated medical opinion not required where ALJ had substantial evidence to conclude that later obtained opinion would not have changed the opinion in the PRTF). Moreover, plaintiff's basic premise that Bramble's evaluation is diametrically opposed to the PRTF is ill founded. As discussed, Bramble's evaluation was largely supportive of the ALJ's finding that plaintiff retained the capacity to work subject to the significant limitations the ALJ imposed; it is not in "diametric opposition" to the PRTF. Social Security Ruling 96-6p did not otherwise require the ALJ or Appeals Council to obtain an updated medical opinion. Thus, this final challenge by plaintiff to the ALJ's decision is without merit.

### III. CONCLUSION

For the foregoing reasons, the court concludes that the ALJ applied the proper legal standards and that his decision is supported by substantial evidence. IT IS THEREFORE RECOMMENDED

16

that the Commissioner's motion for judgment on the pleadings be ALLOWED, plaintiff's motion for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This, the 31st day of December 2009.

James E. Gates
United States Magistrate Judge

17